**In re Albert SACCO, Debtor.**

**Bankruptcy No. 87–1054.**

**Motion No. 88–5368M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

March 15, 1989.

---

Michael S. Geisler, Pittsburgh, Pa., for debtor.

Mary Reitmeyer, Pittsburgh, Pa., Trustee.

Mark S. Seewald, Sable, Makoroff & Libenson, Pittsburgh, Pa., for Stone & Stone.

Linda A. King, King & Kulik, Pittsburgh, Pa., for Kennedy Tp. Mun. Sewage Authority and Kennedy Tp.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

Several matters are before the court. The debtor has moved for leave to amend his schedules. The debtor seeks, inter alia, to amend his schedules to change his exemptions. The trustee has objected to the proposed amendments. To the extent that the court allows the debtor to amend his schedules, the trustee asks the court to treat her objection to that proposed amendment as an objection to the debtor's exemp-

tions. The debtor also has moved to avoid the lien of Stone & Stone. The trustee also seeks additional fees for recovering certain assets which are the subject of the debtor's motion to amend.[1] The motion to amend the schedules is granted, as set forth below. The motion to avoid the lien of Stone & Stone is denied. The motion for additional trustee's fees is granted, as set forth below.

## I. *Facts*

The debtor retained Stone & Stone in August 1983 to represent him in a personal injury matter. A written contingent fee and power of attorney agreement provided that Stone & Stone retain forty percent (40%) of any settlement affected or verdict or judgment rendered if a trial was necessary. The action, entitled *Albert John Sacco v. David Phillips and Kilbuck Township* in the Court of Common Pleas of Allegheny County at GD83–15096, resulted in a jury award of $16,000 for the debtor in October 1986. Thereafter, a judgment for $20,800, which included delay damages, was entered against the defendants. The defendants appealed, but then settled for $18,800. Interestingly, the debtor refused to execute a release, unless he was paid in cash. The defendants moved in the Court of Common Pleas to enforce the settlement (the "settlement motion").

Four days before the hearing on the settlement motion, the debtor filed for relief under chapter 7. Nevertheless, the Court of Common Pleas heard the settlement motion on April 24, 1987, and ordered the defendants to deposit the settlement draft with the Prothonotary of the Court of Common Pleas. The trustee ultimately recovered those funds for the estate.

Stone & Stone filed a timely proof of claim for $11,211.48, relying on an equitable charging lien. Their claim consists of $7,520 in counsel fees and $3,691.48 in costs advanced on behalf of the debtor. The debtor omitted the settlement proceeds

from his Schedule B–2—Personal Property. At the First Meeting of Creditors, on June 10, 1987, the trustee directed the debtor to amend his Schedule B–2 and Schedule B–4 —Property Claimed as Exempt, if the debtor intended to exempt the proceeds of the personal injury settlement. The debtor disregarded the trustee's instructions. Instead, debtor claimed an exemption in a one-half interest in real estate located at 73 Ohio River Blvd., Glenfield, Pennsylvania 15143 (the "real property"). The debtor listed the value claimed as exempt as $6,500.

## II. *The Motion To Amend*

Approximately one year after the First Meeting of Creditors, and after ignoring the trustee's instructions, the debtor now seeks to make the following amendments in his Chapter 7 Statement of Financial Affairs and Schedules. First, the debtor seeks to change his Statement of Financial Affairs to reflect the personal injury action, and another civil action in the Court of Common Pleas of Allegheny County, *Kennedy Township & (sic) Municipal Sewage Authority v. Sacco*, at G.D. 83–03086. With respect to the personal injury action, the debtor indicates that it has been settled for $18,800, but that the debtor may be entitled to "additional proceeds of $15,000 from insurance." With respect to the latter civil action, the debtor indicates that a judgment in the amount of $6,700 has been entered for the plaintiff. The debtor previously listed this debt on his Schedule A–3, but listed the plaintiff's former counsel as the creditor to whom the debt was owed.

The debtor also seeks to amend his Schedule A–1 to indicate that he owes the Internal Revenue Service $6,700 rather than $3,500, the amount originally listed by the debtor. Next, the debtor seeks to amend his Schedule A–3. The only change which the court can discern is to the name of his counsel in the personal injury action; previously, the debtor listed Stone & Stone's predecessor-in-interest. It should be reiterated that the debtor disputes both

---

1. Other matters, which are related to the matters presently before the court, are pending, but have not been heard by the court. The debtor has moved to avoid the lien of Kennedy Township, has objected to the claim of Stone & Stone, and has moved to compel distribution. Finally, the trustee requests additional attorney's fees.

the amount and the secured status of this claim. Next, the debtor seeks to amend his Schedule B-1 to indicate that the value of the real property is $15,000 rather than $30,000 as originally listed. Finally, the debtor attempts to amend his Schedule B-2 to include the settlement proceeds of the personal injury action and the "Potential Insurance Proceeds" of $15,000, and to amend his Schedule B-4 to exempt $11,350 of the settlement proceeds of the personal injury action. In addition, the debtor no longer seeks an exemption in the real property.

■ Bankruptcy Rule 1009 states that "[a] voluntary petition, list, schedule, statement of financial affairs, statement of executory contracts, or Chapter 13 Statement may be amended by the debtor as a matter of course at any time before the case is closed." While this case is open, the debtor does not need leave of court to amend schedules. *In re Gershenbaum*, 598 F.2d 779 (3d Cir.1979) (interpreting former, but substantially similar, Bankruptcy Rule 110); *In re Sheridan*, 38 B.R. 52 (Bankr. Vt.1983).[2] Nevertheless, the trustee objects to several of the proposed amendments. First, the trustee asserts that allowing the debtor to amend to reflect $15,-000 in insurance proceeds will present an inflated picture of the assets available for distribution, when in fact, the debtor has no hope of recovering those funds. The trustee contends that the $15,000 to which the debtor refers constitutes insurance coverage for wages lost in the accident underlying the personal injury action. The trustee further represents that the debtor was precluded from recovering lost wages because the debtor had not properly reported income. If the trustee is correct, then this proposed amendment would not benefit the estate, but in light of *In re Gershenbaum*, we must allow these amendments. If the trustee believes that the debtor's claim for lost wages is valueless, the trustee should promptly abandon such property.

■ The trustee strenuously objects to the debtor's attempt to amend his Schedule B-4. Per the request of the trustee, and consistent with the above, we will consider her objection to this proposed amendment as an objection to the debtor's exemptions. In this connection, the trustee has also filed a formal objection to the debtor's proposed exemptions. The trustee contends that the debtor has had the benefit of an exemption in his one-half interest in the real property. Because of the debtor's exemption of the real property, and after evaluation of the property and the mortgage liability, the trustee chose not to administer the real property as an asset of the estate.

The exemption provisions of the Bankruptcy Code are subject to "the universal rule that exemption statutes should receive a liberal construction in favor of those intended to be benefited...." *In re McQueen*, 21 B.R. 736, 738 (Bankr.Vt. 1982). Absent a showing of bad faith or prejudice to creditors, an allowable exemption should be permitted, irrespective of when it was claimed. *In re Andermahr*, 30 B.R. 532 (Bankr. 9th Cir.1983). The trustee contends that the debtor deliberately concealed the settlement proceeds of the personal injury action. Although we question the actions of the debtor and his counsel, the record lacks clear and convincing evidence of bad faith or deliberate concealment of assets. With respect to the question of whether the creditors have been prejudiced, the debtor could have exempted the proceeds of the personal injury action earlier in the case. Whether the debtor did so then, or does so now, the creditors realize the same result. With respect to the trustee's contention that the debtor has had the benefit of an exemption in the real property for approximately one year, the trustee can still attempt to liquidate the debtor's one-half interest in the real property.

III. *The Motion To Avoid The Lien of Stone & Stone*

The debtor asserts that he is entitled to exempt $11,350 of the settlement proceeds

---

**2.** However, some courts have held that bad faith by the debtor may preclude amendment as a matter of right. *Doan v. Hudgins (In re Doan)*, 672 F.2d 831 (11th Cir.1982); *In re Brown*, 56 B.R. 954 (E.D.Mich.1986); *In re Calvin*, 28 B.R. 52 (Bankr.Ill.1982). Such bad faith must be shown by clear and convincing evidence. *In re Brown*, 56 B.R. 954.

—$3,850 pursuant to 11 U.S.C. § 522(d)(5), and $7,500 pursuant to 11 U.S.C. § 522(d)(11).[3] The settlement proceeds are subject to the charging lien of Stone & Stone, which the debtor has moved to avoid. Thus, the court must determine validity and avoidability of Stone & Stone's charging lien.

■ Section 522(f)(1) of the Bankruptcy Code, 11 U.S.C. § 522(f)(1), empowers a debtor to "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is—(1) a judicial lien...." Simply stated, the court must first determine if a charging lien is a judicial lien. If this question is answered affirmatively, the court must then determine whether the lien of Stone & Stone is a charging lien pursuant to Pennsylvania law. If the court determines that Stone & Stone's lien is not a judicial lien, we must then look to 11 U.S.C. § 522(g) and (h). Those subsections provide the debtor with certain exemptions by empowering the debtor to avoid transfers of property which could have been, but were not, avoided by the trustee.

The Bankruptcy Code defines a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(27). In *In re Sacerdote*, 74 B.R. 487 (Bankr.E.D.Pa.1987), a case factually similar to the instant case, the court held that an attorney's charging lien is not a judicial lien: "A prepetition debt owed to an attorney may be a secured debt if the attorney's claim is protected by one of three Pennsylvania common law liens: a retaining lien, a legal charging lien, or an equitable charging lien." *Id.* at 490. A retaining lien permits an "attorney to retain money, papers or other property in his possession to secure payment of costs and fees" arising from any representation of that particular client. *Novinger v. E.I. DuPont de Nem-*

ours & Co., Inc., 809 F.2d 212, 218 (3d Cir.1987), cert. denied, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). An "equitable charging lien gives an attorney the right to be paid out of a fund in court which resulted from his skill and labor," but the "legal charging lien applies to a fund in the attorney's possession...." *Id.* Therefore, the lien which is the subject of this dispute is an alleged equitable charging lien.

*Recht v. Urban Redevelopment Authority of Clairton*, 402 Pa. 599, 168 A.2d 134, 138–139 (1961), enumerates the prerequisites of an attorney's equitable charging lien under Pennsylvania law:

> [I]t must appear (1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

Numerous other courts have recited the five elements in *Recht v. Urban Redevelopment Authority* as the standard for determining the existence of an attorney's charging lien. *Reitmeyer v. Kalinsky (In re Sounds Distributing, Inc.)*, 80 B.R. 749 (Bankr.W.D.Pa.1987); *In re Sacerdote*, 74 B.R. 487; *Johnson v. Stein*, 254 Pa.Super. 41, 385 A.2d 514 (1978).

An attorney's charging lien arises by operation of law. As indicated in *Recht v. Urban Redevelopment Authority*, no affirmative action is required to establish an attorney's charging lien. Therefore, we agree with the conclusion of the bankruptcy court in *In re Sacerdote;* we hold that a

---

**3.** Section 522(d)(11)(D) of the Bankruptcy Code, 11 U.S.C. § 522(d)(11)(D), entitles a debtor to exempt "a payment, not to exceed $7,500, on account of personal bodily injury, *not including pain and suffering or compensation for actual*

*pecuniary loss....*" Since the trustee has not argued to the contrary, the court will assume that the entire proceeds from the personal injury action were for bodily injury.

properly constituted attorney's charging lien is a secured debt which may not be avoided pursuant to 11 U.S.C. § 522(f)(1).

■ Applying the five factors of *Recht* to the instant case, the court finds that the Prothonotary is holding the settlement proceeds, so the first requirement of *Recht* is satisfied. The services of Stone & Stone secured the fund from which they seek to be paid, so the second requirement is satisfied. The debtor and Stone & Stone executed a written power of attorney agreement. Stone & Stone's lien is limited to their fees and the costs they advanced. Therefore, the third and fourth requirements of *Recht* were satisfied. Finally, equitable considerations require that we recognize Stone & Stone's lien. First, the debtor has attempted to modify Stone & Stone's claim. Moreover, from the debtor's refusal to execute a settlement agreement unless he was paid in cash, the court can infer that the debtor was trying to deprive Stone & Stone of their fees. Although the debtor may have expected a higher settlement, the record does not indicate that Stone & Stone's services were deficient. Because we conclude that the five requirements of *Recht v. Urban Redevelopment Authority* were satisfied, we find that Stone & Stone has a valid attorney's charging lien.

■ Because we have determined that the debtor cannot avoid Stone & Stone's lien pursuant to 11 U.S.C. § 522(f)(1), we must consider whether the debtor can avoid Stone & Stone's lien pursuant to 11 U.S.C. § 522(g) and (h). The latter subsection provides as follows:

The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recov-

erable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

Subsection (g), inter alia, allows a debtor to exempt such recovered property "if—(1)(A) such transfer was not a voluntary transfer of such property by the debtor, and (B) the debtor did not conceal such property...."

The debtor has not informed the court which of the trustee's avoidance powers are applicable. The only sections of the Bankruptcy Code that appear to apply are 11 U.S.C. § 544 and 11 U.S.C. § 549. Section 544 empowers the trustee to avoid an unperfected security interest. Section 549 empowers the trustee to avoid post-petition transfers. However, the "general rule is that an attorney's charging lien relates back to and is effective from the time the attorney commences his services." *In re Sea Catch, Inc.*, 36 B.R. 226, 233 (Bankr.D. Alaska 1983); 7 Am.Jur.2d Attorneys at Law § 332 (1980). Therefore, Stone & Stone's lien was sufficiently perfected so that it could not be avoided under 11 U.S.C. § 544. A fortiori, any such transfer was not post-petition. Accordingly, the debtor cannot use 11 U.S.C. § 522(g)–(h) to avoid the lien of Stone & Stone.

## IV. *The Trustee's Application for Additional Fees*

■ One matter remains. The trustee asserts that she is entitled to the statutory trustee fees for recovering the settlement proceeds. We agree and will award three percent (3%) of the settlement proceeds to the trustee. Upon resolution of the debtor's objection to Stone & Stone's claim,[4] the settlement proceeds first shall be allocated to Stone & Stone. Next, the three percent (3%) of the settlement proceeds shall be allocated to the trustee. The remainder of the settlement proceeds are available to the debtor as his exemption.

An appropriate order is attached.

---

**4.** Based on the facts presently of record, the court is currently disinclined to grant the debtor's objection to Stone & Stone's claim.